UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF MAX BENSON, et al., | No. 2:25-cv-00670-DJC-CSK |
| Plaintiffs, | |
| v. | ORDER |
| GUIDING HANDS SCHOOL, INC., et al., | |
| Defendants. | |

This civil action concerns the events surrounding and leading up to the death of M.B., a student at Guiding Hands School ("GHS").  This case was originally part of a larger action concerning the usage of restraints and general treatment of several students at GHS but was recently severed.  (*See* ECF No. 1.)  Presently before the Court are four separate motions to dismiss filed by the Defendant California Department of Education ("CDE"), Defendant Davis Joint Unified School District ("DJUSD"), Yolo County Defendants, which consists of Defendant Yolo County Office of Education ("COE") and Defendant Yolo County SELPA, and Defendant GHS.  For the sake of clarity and efficiency, the Court addresses all of these motions in this Order.

At the outset, the Court wishes to note that the main event that led to this action – the loss of life of a young child – is a tragedy that is surely a source of extreme pain for Plaintiffs.  Nothing in the Court's Order here is intended to diminish the tragic loss of life or minimize the seriousness of Plaintiffs' claims.  The Courts' focus at this stage is purely on ensuring the legal sufficiency of the allegations before it.

With that said, and for the reasons stated below, the Court grants the Motions to Dismiss filed by Defendant CDE, Defendant DJUSD, and the Yolo Defendants.  The Court grants in part and denies in part Defendant GHS' Motion to Dismiss and grants Defendant GHS' Motion to Strike.

## BACKGROUND

Given its long-running nature, the parties are undoubtedly familiar with the factual background of this case.  As such, the Court will only provide an abbreviated summary of the factual allegations in Plaintiff's Fourth Amended Complaint ("4AC") here.

Decedent M.B., a thirteen-year-old with Ehler-Danlos syndrome, was a student enrolled at GHS on June 13, 2018, during an Individual Education Placement meeting. (4AC ¶ 2.)  At that time, M.B. was living in the DJSUD, which was part of the Yolo County Special Education Local Plan Area or SELPA.  (*Id.*)  On November 28, 2018, M.B. spit at another GHS student.  (*Id.* ¶ 30.)  A GHS employee, Kimberly Wohlwend, "performed a 'takedown' maneuver on M.B., which included holding his hands behind his back, dropping him to his knees and rolling him over into a prone, face-down restraint."  (*Id.*)  GHS employees held M.B. face down on the floor for approximately an hour and forty-five minutes.  (*Id.* ¶ 31.)  During that time, M.B. allegedly urinated on himself, vomited, and aspirated his own vomit.  (*Id.* ¶ 34.)  "[A]t approximately 1:50 p.m., M.B. aspirated, went into cardiac arrest, and lost consciousness."  (*Id.* ¶ 35.)  M.B. ultimately died on November 30, 2018, from injuries sustained during these events. (*Id.* ¶ 39.)

The decedent's estate, along with M.B.'s parents, Stacia and David Benson, are the plaintiffs in this action.  The present operative complaint brings ten causes of action against Defendants CDE, DJUSD, Yolo COE, Yolo County SELPA, and GHS.  (*See* 4AC at 11–21.)

Each of the Defendants' Motions to Dismiss are fully briefed.  On January 22, 2026, oral argument on those Motions was held at the conclusion of which the Court took these matters under submission pursuant to Local Rule 230(g).  (ECF No. 56.)

**LEGAL STANDARD FOR MOTION TO DISMISS**

A party may move to dismiss for "failure to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).  The motion may be granted only if the complaint lacks a "cognizable legal theory or sufficient facts to support a cognizable legal theory."  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  While the court assumes all factual allegations are true and construes "them in the light most favorable to the nonmoving party," *Steinle v. City & County of San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019), if the complaint's allegations do not "plausibly give rise to an entitlement to relief" the motion must be granted, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

A complaint need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief[,]" Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  This rule demands more than unadorned accusations; "sufficient factual matter" must make the claim at least plausible.  *Iqbal*, 556 U.S. at 678.  In the same vein, conclusory or formulaic recitations of elements do not alone suffice.  *Id*.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  This evaluation of plausibility is a context-specific task drawing on "judicial experience and common sense."  *Id*. at 679.

**DEFENDANT CDE'S MOTION TO DISMISS**

Defendant CDE moves to dismiss Cause of Action Nine and Ten of the Fourth Amended Complaint mainly on the basis that, as a public entity, Defendant CDE cannot be held liable due to California Government Code section 815.  (CDE Mot. (ECF No. 43-1); *see* CDE Reply (ECF No. 51).)  Section 815 provides that "[e]xcept as otherwise provided by statute . . . [a] public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person."  Plaintiffs do not contest that section 815 applies to Defendant CDE as a public entity, but instead assert that Defendant CDE is still liable as they were performing a mandatory duty.  Government Code section 815.6 states that "[w]here a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."  For liability to be permitted under section 815.6, three requirements must be satisfied: "(1) an enactment must impose a mandatory duty; (2) the enactment must be meant to protect against the kind of risk of injury suffered by the party asserting section 815.6 as a basis for liability; and (3) breach of the mandatory duty must be a proximate cause of the injury suffered."  *San Mateo Union High Sch. Dist. v. City of San Mateo*, 213 Cal. App. 4th 418, 428 (2013).

## I.  Proximate Cause

Plaintiffs' Cause of Action Nine and Ten against CDE presently fail on the third requirement, as Plaintiffs have not sufficiently alleged that Defendant CDE's breach of a mandatory duty was the proximate cause of Plaintiffs' injury.  The allegations in the 4AC only minimally address Defendant CDE's breach of any mandatory duties.  In paragraph 27 of the 4AC, Plaintiffs allege:

> The CDE and LEA Defendants had statutory and/or
> regulatory obligations to prevent GHS' unlawful conduct,

4

> knew that it was occurring, and nevertheless evinced a policy of deliberate indifference to the harm suffered by GHS victims. In this regard, the CDE and the LEA Defendants abdicated their responsibilities to monitor and supervise restraint use in nonpublic schools and to ensure compliance with state and federal laws prohibiting discrimination and illegal restraint use.

Plaintiffs also allege in Paragraph 29:

> The CDE and the LEA Defendants repeatedly breached their statutory and regulatory duties to monitor, supervise, train and ensure compliance with laws prohibiting discrimination and child abuse, continuing to certify GHS and place children in GHS' care. Plaintiff is informed and believes, and thereupon alleges, that the CDE and LEA Defendants received numerous complaints regarding GHS' unlawful abuse of children over the course of many years, and yet each of these Defendants made the deliberate choice to ignore them. As a result of their failure to act on repeated complaints of prior abuse, excessive force, and injury, M.B. was killed by an unlawful prone restraint administered by GHS personnel.

In effect, Plaintiffs have only plainly alleged that Defendant CDE violated the mandatory duties they identify based on broad failures to "monitor, supervise, train and ensure compliance with laws prohibiting discrimination and child abuse," but without alleging any particular action or inaction that constituted a breach of an identified mandatory duty for purposes of section 815.6. Plaintiffs' sole reference to a potential breach in Paragraph 29 is an allegation made solely on information and belief with no additional information for support. In general, such pleading may be adequate. However, for liability to be permitted under section 815.6, Plaintiffs are required to establish that the "breach of the mandatory duty" was "a proximate cause of the injury suffered." *San Mateo Union High Sch. Dist.*, 213 Cal. App. 4th at 428. Based on the limited allegations of breach currently presented, it is impossible for the Court to find that Defendant CDE's alleged breach of a mandatory duty was the proximate cause of Plaintiffs' injuries.

While the Court will grant Defendant CDE's Motion to Dismiss as to Plaintiffs' Cause of Action Nine and Ten as to Defendant CDE on this basis, leave to amend is clearly warranted.  While this action is severed from a much older case and the Court wants to ensure that litigation now proceeds forward, it is not yet clear that amendment would be futile.  However, Plaintiffs are cautioned that in amending their complaint, they must clearly identify the mandatory duties at issue and allege sufficient facts to satisfy the requirements of section 815.6.  Failure to do so may result in dismissal without leave to amend.

**II.  Sources of Purported Mandatory Duty**

In briefing CDE's Motion to Dismiss, Plaintiffs identified a number of statutes that they assert establish a mandatory duty.  As Plaintiffs have not established that the breach of these alleged duties was the proximate cause of Plaintiffs' injuries, it is not strictly necessary for the Court to address whether these statutory provisions create a mandatory duty.  However, in order to avoid unnecessary briefing and streamline the pleading process, the Court will discuss below the identified statutory provisions that clearly do not impose a mandatory duty.[1]

"Whether a particular statute is intended to impose a mandatory duty, rather than a mere obligation to perform a discretionary function, is a question of statutory interpretation for the courts." *Id.* at 428–29.  A mandatory duty is an enactment that is "obligatory, rather than merely discretionary or permissive, in its directions to the public entity; it must require, rather than merely authorize or permit, that a particular action be taken or not taken." *Id.*  The mandatory duty requirement is generally construed "strictly" by courts. *Guzman v. County of Monterey*, 46 Cal. 4th 887, 898 (2009).  "An enactment creates a mandatory duty if it requires a public agency to take

---

[1] The Court does not address all of the sections identified by Plaintiffs; only those that the Court can clearly find do not establish a mandatory duty.  The Court's exclusion of some identified statutes should not be read as a determination that those provisions create a mandatory duty.  Instead, the Court simply finds that it would be premature to address whether they create a mandatory duty without the benefit of a further amended complaint.

a particular action.  An enactment does not create a mandatory duty if it merely recites legislative goals and policies that must be implemented through a public agency's exercise of discretion." *Lockhart v. County of Los Angeles*, 155 Cal. App. 4th 289, 308 (2007) (internal citations omitted).  Courts generally only find there to be a mandatory duty where "the enactment affirmatively imposes the duty and provides implementing guidelines."  *Guzman v. County of Monterey*, 46 Cal. 4th 887, 898 (2009) (internal citations and quotation marks omitted).

### A. California Education Code Sections 56520, 56521, 56521.1, 56521.2, and 56523

The "state emergency intervention statutes" contained in sections 56520, 56521, 56521.1, 56521.2, and 56523 do not impose a mandatory duty on Defendant CDE.  Plaintiffs contend that these sections "must be read together" and that, via section 56521 specifically, the Superintendent (and thus CDE) has a duty of oversight over the implementation of these sections.  Plaintiffs' argument rests on section 56521(b), which states "[t]he Superintendent of Public Instruction shall monitor and supervise the implementation of this chapter."  Reading this provision as imposing a mandatory duty pushes well beyond the strict construction of mandatory duty utilized by courts.  *Guzman*, 46 Cal. 4th at 898.

Besides broadly providing that the Superintendent should "monitor and supervise" the implementation of these sections, neither section 56521 nor any of the other cited sections provide any implementing guidelines or further statements on what this duty entails.  *See Guzman*, 46 Cal. 4th at 898.  In fact, section 56523(b) specifically states that this chapter is to be "implemented by local educational agencies without the development by the Superintendent and adoption by the state board of any additional regulations."  Plaintiffs interpret that statement as supporting their position that this chapter imposes mandatory duties on Defendant CDE.  (Opp'n to CDE Mot. at 12.)  But in reality it supports the view that this chapter is intended for implementation by local agencies without the involvement of CDE at all.  In short,

these state emergency intervention statutes do not create a mandatory duty for Defendant CDE for purposes of section 815.6, regardless of whether they are considered separately or collectively.

### B. California Education Code Sections 56125 and 56600.6

On its own, section 56125 imposes two duties on the Superintendent and Defendant CDE.  First, subsection (a) requires that "[t]he Superintendent shall monitor, provide technical assistance, and enforce the provisions of this part pursuant to Section 56600.6."  Second, subsection (b) requires that "[t]he Superintendent shall monitor the implementation of local plans by periodically conducting onsite program and fiscal reviews, in accordance with Sections 300.114 to 300.120, inclusive, of Title 34 of the Code of Federal Regulations."  Standing alone, neither of these subsections provide sufficient direction to constitute a mandatory duty.  While they undoubtedly provide instruction to CDE, there is no guidance provided on implementation, which is instead left to the agency's discretion.  *See Lockhart*, 155 Cal. App. 4th at 302; *Guzman*, 46 Cal. 4th at 898.

Section 56600.6 is also referenced by section 56125(a), and these sections are cited by Plaintiff as collectively creating a mandatory duty.  (Opp'n to CDE Mot. at 13–16.)  Section 56600.6 does make liberal use of the word "shall" in its contents.  Closer examination of this section makes clear that it is only details broad policy directives to be undertaken by CDE, with the method of enactment to be determined by CDE.  Specifically, section 56600.6 provides that CDE must "ensure" monitoring of pupil and program performance results (subsection (a)); "monitor, provide technical assistance, and enforce" this section and the Federal Individuals with Disabilities Education Act (subsection (b)); use of "quantifiable indicators and qualitative indicators" in measuring performance (subsection (d)); and "collect valid and reliable information as needed to report annually to the United States Secretary of Education[,]" (subsection (e)).  Cal. Educ. Code section 56600.6.  None of these subsections provide any clear mandatory duty beyond establishing broad responsibilities.  Instead, the details of

implementation are left entirely to Defendant CDE's discretion.  Subsection (c) does provide a list of two items as "the primary focus of the state's monitoring activities . . . ."  *Id.*  But these items simply provide policy goals for CDE to "[i]mprov[e] education results[,]" and "[e]nsur[e] that public agencies meet the program requirements . . . ."  *Id.*  They do not provide specific instructions that would be sufficient to create a mandatory duty.  Thus, section 56600.6, both on its own and read together with section 56125, does not create a mandatory duty for Defendant CDE.

## C. California Education Code Section 56135

In full, section 56135 provides the following:

> (a) The superintendent shall be responsible for assuring provision of, and supervising, education and related services to individuals with exceptional needs as specifically required pursuant to the Individuals with Disabilities Education Act (20 U.S.C. Sec. 1400 et seq.).
>
> (b) Nothing in this part shall be construed to authorize the superintendent to prescribe health care services.

Similar to the discussion above regarding section 56125, section 56135 does not impose a mandatory duty.  Section 56135 identifies a broad responsibility of CDE to supervise the provision of education services under the Individuals with Disabilities Education Act and assuring that those services are provided.  Given the absence of any further guidance on implementation, this is far more akin to a policy statement than anything resembling a mandatory duty.   Thus, the Court concludes that section 56135 does not create a mandatory duty for Defendant CDE.

## III. Vicarious liability

It appears there is no dispute that Defendant CDE is not subject to vicarious liability except through the entities' employees who were acting within the scope of their employment.  Given the lack of clear dispute, the above dismissal of the causes

of action against Defendant CDE, and the fact that the Court has granted Plaintiffs leave to amend, the Court will not address this argument further.[2]

**DEFENDANT DJUSD AND YOLO DEFENDANTS' MOTIONS TO DISMISS**

Defendant DJUSD and Yolo Defendants filed separate motions to dismiss. (DJUSD Mot. (ECF No. 44); Opp'n to DJUSD Mot. 48); DJUSD Reply (ECF No. 54); Yolo Mot. (ECF No. 45); Opp'n to Yolo Mot. (ECF No. 49); Yolo Reply (ECF No. 55).) In addition to arguments distinct between the defendants, both motions also identify issues that are common to all three defendants. As these overlapping issues are dispositive, it is more expedient for the Court to address both Defendant DJUSD's and Yolo Defendants' Motions together.

Though their exact arguments on this point differ, both Defendant DJUSD and Yolo Defendants contend that the allegations in the 4AC against the Local Education Agency ("LEA") defendants (which includes DJUSD, Yolo COE, and Yolo County SELPA) are broadly inadequate. (*See* DJUSD Mot. at 4–5; *see also* Yolo Mot. at 8–11.) The Court does not agree with the exact form of the arguments presented by the LEA defendants regarding the general sufficiency of the allegations. But the Court nevertheless does agree that, for the same underlying reasons identified in the Motions, the allegations as to the LEA defendants in the 4AC are inadequate to state a claim against any of these defendants.

In the 4AC, Plaintiffs' claims against the LEAs rest on nonspecific allegations that these defendants were aware of the dangers of restraints based on notifications from the United States Department of Education, as well as "via lawsuits, parent and student complaints, media reporting, behavior investigation reports, and investigations by and communications from advocates." (4AC ¶¶ 22–23.) Beyond this conclusory allegation, the complaint fails to identify any specific event that should have informed the LEA defendants about the dangers of restraints.

---

[2] The Court also declines to address the immunity arguments at this stage, given the above dismissal.

Even more importantly, the 4AC does not establish any meaningful connection between the LEA defendants and GHS' alleged use of physical restraints and excessive force.  Plaintiffs' claims against these defendants are predicated on two basic theories: (1) that the LEA defendants failed to "train, certify, monitor, supervise, and investigate restraint use in nonpublic schools, and to thereby ensure compliance with state and federal laws prohibiting discrimination and illegal restraint use[,]" (*id.* ¶¶ 48, 54, 67); or (2) that the LEA defendants acted in concert with GHS and "jointly adopted" GHS' practices by encouraging and approving GHS' use of physical restraints (*id.* ¶¶ 58, 61-62, 76, 79, 82, 89).  But regardless of the mechanism of liability that Plaintiffs assert, the 4AC is lacking in factual allegations supporting either theory. The majority of Plaintiffs' potentially relevant allegations in this regard are exclusively made on information and belief:

- "Plaintiff is informed and believes, and thereupon alleges, that the CDE and LEA Defendants received numerous complaints regarding GHS' unlawful abuse of children over the course of many years, and yet each of these Defendants made the deliberate choice to ignore them. As a result of their failure to act on repeated complaints of prior abuse, excessive force, and injury, M.B. was killed by an unlawful prone restraint administered by GHS personnel." (*Id.* ¶ 29.)
- "Plaintiff is informed and believes, and thereupon alleges, that these public entities, along with Defendant CDE, were so heavily involved in the day-to-day policies and procedures adopted by GHS, including policies related to discipline and the use of restraints, that they became closely entwined and acted jointly to administer unlawful and abusive restraints against disabled children, including specifically the prone restraint that killed M.B." (*Id.* ¶ 58.)
- "Plaintiff is informed and believes, and thereupon alleges, that GHS staff adopted and administered abusive disciplinary policies and procedures, including the prone restraint that killed M.B., in direct response to coercion

11

and encouragement from public officials who viewed these interventions as more cost-effective than training, monitoring, and supervising the types of Positive Behavioral Interventions set forth in M.B.'s BIP." (*Id.* ¶ 60.) In addition to being based solely on information and belief, these assertions are made in conclusory fashion without any supporting factual allegations. The 4AC also includes an allegation that Defendants, including the LEA defendants, "received complaints and Behavioral Emergency Reports ('BERs') detailing the abusive disciplinary practices being deployed at GHS against disabled students, including M.B." (*Id.* ¶ 66.) But this allegation – buried in a single sentence within the Fourth Cause of Action with no further details or supporting factual allegations – is hardly sufficient on its own to sustain the claims against the LEA defendants.

To put the issue simply, Plaintiffs have brought numerous causes of action against Defendant DJUSD and Yolo Defendants, but these claims lack plausible allegations supporting them. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The limited allegations in the present complaint do not allow the Court to draw the reasonable inference that Defendant DJUSD and Yolo Defendants are liable for any of the causes of action in the complaint.

While the Court agrees that the claims against the LEA defendants lack sufficient factual allegations to be plausible as alleged, the Court does not agree with all of the connected arguments put forward by the Defendants. Part of Defendant DJUSD's argument in this regard focuses on Plaintiffs' usage of "group" pleading where the LEA defendants were grouped together. While generally this sort of pleading is not permissible because it leads to ambiguity regarding what allegations apply to the individual defendants, the Court is not persuaded that this is an issue here. The 4AC is clear that the allegations against these defendants are true as to each of them. Defendant DJUSD asserts that as a result of this pleading style, Plaintiffs

incorrectly pled that DJUSD "continued to certify GHS[.]"  (DJUSD Mot. at 4 n.1.)  But the later inclusion of a similar allegation in a cause of action that does not include Defendant CDE (*see* 4AC ¶ 67) suggests that this error stems not from group pleading but from Plaintiffs' belief – possibly a mistaken belief – about what entities were responsible for certifying GHS.  The Yolo Defendants separately argue that the allegations are insufficient but partially rely on allegations and documents attached to prior pleadings.  The facts alleged in a prior complaint are not relevant to a determination of the sufficiency of allegations in the operative complaint.[3]

Regardless of the Courts' disagreement with these particular arguments, the general arguments raised by the LEA defendants regarding the sufficiency of the allegations against them are nevertheless correct for the reasons stated above.  Thus, the Court grants Defendant DJSUD and Yolo Defendant's Motions to Dismiss.

Plaintiffs shall be granted leave to amend, as it is not yet apparent that further amendment would be futile.  Plaintiffs are advised that should they seek to state claims against the LEA defendants in an amended complaint, failure to allege sufficient facts to satisfy the federal pleading standard may result in a determination that amendment is futile and dismissal of the claims against these defendants without leave to amend.

## DEFENDANT GHS' MOTION TO DISMISS

### I.  Second Cause of Action – Violation of Section 504 of the Rehabilitation Action

Defendant GHS asserts Plaintiffs' Second Cause of Action is deficient as Plaintiffs failed to allege that GHS had received federal funds.  (GHS Mot. (ECF No. 46-1) at 12–16; *see* GHS Reply (ECF No. 52) at 2–5.)  Section 504 of the Rehabilitation Act prohibits the exclusion of an individual with disabilities from federally funded programs or activities on the basis of their disabilities.  *See* 29 U.S.C. § 794.  Key to the

---

[3] Even where facts alleged in a complaint directly contradict facts alleged in prior complaints, this contradiction alone does not serve as a basis for dismissal.  *PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 960 (9th Cir. 2007).

dispute here is whether the complaint adequately alleges that GHS receives federal funds such that it can be held liable for a violation of section 504 of the Rehabilitation Act.

The relevant allegation, contained within paragraph 52 of the 4AC, states:

> Defendant CDE receives federal funding to provide education services to students with disabilities pursuant to 20 U.S.C. §§ 1411-1413, money which is then distributed to Defendants DJUSD, YOLO SELPA, and YOLO COE to be utilized for this purpose. Plaintiff is informed and believes, and thereupon alleges, that during the relevant time period these federal funds were further distributed by Defendants CDE, DJUSD, YOLO SELPA, and/or YOLO COE to Defendant GHS in order to fund the provision of a free public education to M.B. and other qualifying students with disabilities. See Cal. Ed. Code § 56365; 34 C.F.R. § 104.2.

Plaintiffs' claim is thus that Defendant CDE received federal funding, CDE distributed those funds to Defendant DJUSD and the Yolo Defendants, and that those defendants in turn distributed those funds to Defendant GHS. As presently alleged, this is insufficient to state a claim under section 504.

For Plaintiffs to state a claim against Defendant GHS under the Rehabilitation Act, Plaintiffs must adequately allege that Defendant GHS "affirmatively chose to receive federal monies . . . ." *Castle v. Eurofresh, Inc.*, 731 F.3d 901, 909 (9th Cir. 2013). The allegations in the 4AC do not provide any indication that Defendant GHS made any affirmative decision to receive the federal funding identified. Plaintiffs only assert that Defendant GHS received federal monies that were "distributed by" Defendant DJUSD and the Yolo Defendants after they themselves received those funds from Defendant CDE. (4AC ¶ 52.) This limited allegation is insufficient to establish liability. As alleged, it is unclear whether these funds were specifically and intentionally provided to GHS with their knowledge that they were federal monies.[4]

---

[4] In fact, from the facts alleged it is unclear whether Defendant DJUSD and Yolo Defendants were aware that the funds they received from Defendant CDE contained federal monies.

Read reasonably, the allegations in the 4AC only establish that these federal monies were provided to Defendant CDE and simply added to the pool of funds utilized by Defendant CDE and LEA Defendants to support special education in California.  Thus, as alleged, GHS only incidentally received federal funding because it received money from the state Defendants.[5]

In their Opposition, Plaintiffs cite the recent decision of Chief District Judge Troy L. Nunley in *A.S. v. Point Quest*, No. 2:23-cv-02029-TLN-CSK, 2025 WL 3485033 (E.D. Cal. Dec. 4, 2025).  (Opp'n to GHS Mot. (ECF No. 49) at 4–5.)  While Judge Nunley's decision there was undoubtedly well-reasoned, it does not support a finding that Plaintiffs have adequately alleged that GHS affirmatively chose to receive federal monies.  In ruling that the defendant, Point Quest, could be held liable under the Rehabilitation Act, Judge Nunley relied on a number of specific factual allegations in the plaintiff's complaint.  *Id.* at *7.  Similar factual allegations are simply not present in Plaintiffs' 4AC.  This decision thus supports the view that dismissal of this claim against Defendant GHS is warranted.

Defendant GHS also argues for dismissal on the basis that Plaintiffs have not alleged sufficient facts to support that Defendant GHS intentionally discriminated against M.B. on the basis of his disability.  On this point, the Court disagrees.  Plaintiffs alleged that Defendant GHS "restrained students frequently, with excessive force, in response to predictable disability-related behaviors" (4AC ¶ 24) and that M.B. was subject to physical restraints and excessive force for spitting at another student, "a known disability-related behavior noted throughout his educational records and in his BIP[,]" (*id.* ¶ 30).  Put simply, Plaintiffs' allegation is that Defendant GHS subjected students, and specifically M.B., to restraints and excessive force based on disability-

---

[5] The Court also notes that the allegation concerning this distribution is made on information and belief. While the Court does not rely on this fact in reaching its conclusion, it is notable that the sole allegation in this regard is made on information and belief.

based behavior.  At this stage of these proceedings, this is more than sufficient to state a claim.

However, as stated above, the Court shall dismiss Plaintiffs' claim under section 504 against Defendant GHS based on the failure to adequately allege facts that establish that GHS affirmatively chose to receive federal monies.  Plaintiffs will be granted leave to amend as to this claim, as further amendment does not yet appear futile.

**II.  Third Cause of Action – Section 1983**

Defendant GHS asserts that the 4AC fails to adequately allege facts that establish that GHS was acting under color of state law.  (GHS Mot. at 16–22.)  While it is undisputed that Defendant GHS is a private actor, it can still be held liable under section 1983 if it engaging in state action.  *See Chaudhry v. Aragon*, 68 F.4th 1161, 1169 (9th Cir. 2023).  The Ninth Circuit "recognize[s] at least four different criteria, or tests, used to identify state action: (1) public function; (2) joint action; (3) governmental compulsion or coercion; and (4) governmental nexus."  *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003) (internal citations and quotation marks omitted).  Plaintiffs assert that the allegations in the 4AC satisfy the second, third, and fourth of these tests.  (Opp'n to GHS Mot. at 9–11.)

Whether under the joint action test or the governmental nexus test, the Court is satisfied that, at the pleading stage, the allegations in the 4AC are sufficient to establish that GHS was a state actor.  "Under the joint action test, we consider whether the state has so far insinuated itself into a position of interdependence with the private entity that it must be recognized as a joint participant in the challenged activity. This occurs when the state knowingly accepts the benefits derived from unconstitutional behavior."  *Kirtley*, 326 F.3d at 1092 (internal citations and quotation marks omitted).  The question in the governmental nexus test is whether "there is [ ] such a close nexus between the State and the challenged action that the seemingly private behavior may be fairly treated as that of the State itself."  *Kirtley*, 326 F.3d at 1092 (quoting

*Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)).

In support of application of the joint action test, Plaintiffs cite the allegations in the 4AC that M.B. was placed at GHS through a Yolo SELPA IEP process (4AC ¶ 2.a), remained a public school student by statute (*id.* ¶ 57), and was entitled to free public education throughout his placement (*id.* ¶ 46).  Plaintiffs also alleged that GHS utilized physical restraints as a cost-saving measure and that the state was aware of the usage of physical restraints.  (*id.* ¶¶ 54, 61.)  In the Opposition, Plaintiffs also note the numerous allegations concerning the state's oversight over the provision of public education by nonpublic schools.[6]  (Opp'n to GHS Mot. at 9.)  In discussing the governmental nexus test, Plaintiffs also repeat that GHS was certified by CDE "to provide special-education services on the State's behalf."  (*Id.* at 11.)

At the pleading stage, these allegations are sufficient to establish that the state and GHS were in a position of interdependence in providing special education to students on behalf of the state, such that the state and GHS must be considered joint participants.  There is also a sufficiently close nexus between GHS and the government alleged in the complaint to satisfy the governmental nexus test.  Thus, Plaintiffs have alleged sufficient facts to proceed with their section 1983 action against Defendant GHS.

The Court does note that the determination of whether a private party is a state actor is a "necessarily fact-bound inquiry . . . ." *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 939 (1982).  The Court's determination here is necessarily based on the factual allegations before it.  But whether GHS is properly considered a state actor is an issue that will no doubt be addressed again at a later stage in these proceedings with the benefit of discovery and evidence.

---

[6] While many of the cited sections do not create a mandatory duty for Defendant CDE for purposes of section 815.6 (*see supra* Defendant CDE's Motion to Dismiss, II), these statutes are still relevant for other purposes.

**III. Fourth Cause of Action – Violation of California Education Code Section 220**

Plaintiffs' Fourth Cause of Action is sufficiently pled in the 4AC.  "The elements for demonstrating a claim under Section 220 mirror those for a claim under Title IX . . . .  A plaintiff must show (1) he or she suffered severe, pervasive and offensive harassment that effectively deprived the plaintiff of the right of equal access to educational benefits and opportunities; (2) the school had actual knowledge of the harassment; and (3) the school responded with deliberate indifference."  *Walsh v. Tehachapi Unified Sch. Dist.*, 827 F. Supp. 2d 1107, 1124 (E.D. Cal. 2011).  Plaintiffs allege M.B. was subject to physical restraints and excessive force in response to documented disability related behavior, resulting in his death.  These allegations establish severe harassment based on his disability, knowledge of the harassment given the alleged common use of restraints and the lengthy duration of M.B.'s restraint, and deliberate indifference to that harassment.  Defendant GHS' suggestion that the 4AC does not "contain any factual allegations of severe and pervasive conduct" (GHS Mot. at 23), is without merit.

Defendant GHS also argues that Plaintiffs have not adequately alleged that Defendant GHS received state funding.  (GHS Mot. at 23.)  While it is true that Plaintiffs do not plead in plain language that GHS received state funding, the allegations in the 4AC are more than sufficient to satisfy this requirement.  In addition to other similar allegations, Plaintiffs have clearly alleged that M.B. was placed at GHS pursuant to an IEP (4AC ¶ 2.a), and that M.B. received a "free public education" while placed at GHS (*id.* ¶ 46).  While Plaintiffs may wish to state this allegation more clearly in amending their complaint, the Court denies Defendant GHS' Motion to Dismiss this Cause of Action.

**IV. Fifth Cause of Action – Unruh Act**

Defendant contends that Plaintiffs' Unruh Act claim against Defendant GHS must be dismissed based on the California Supreme Court's decision in *Brennon B. v. Superior Court*, 13 Cal. 5th 662 (2022).  In *Brennon*, the court found that public school

districts are not "business establishments" within the meaning of the Unruh Act and were thus not subject to liability under the Act. *Id.* at 583. In reaching this determination, the court found that, "[w]hen acting in their core educational capacity, public school districts do not perform 'customary business functions,' nor is their '*overall function* . . . to protect and enhance . . . economic value.'" *Id.* at 681 (emphasis in original) (quoting *O'Connor v. Village Green Owners Assn.*, 33 Cal. 3d 790, 796 (1983)). The court emphasized that "public school districts are responsible for the provision of free and public education pursuant to a state constitutional mandate[.]" *Id.* The court also expressed agreement with the reasoning of the district court in *Zuccaro v. Martinez Unified School Dist.*, No. 16-cv-02709-EDL, 2016 WL 10807692 (N.D. Cal. Sept. 27, 2016). *Id.* at 684. In particular, the California Supreme Court emphasized the district court's focus on whether the entity resembled "an ordinary for-profit business[.]" *Id.*

Defendant GHS argues that *Brennon* applies in equal force to the claims against GHS, as GHS was providing M.B. with public education at the time of his death. (GHS Mot. at 25–26.) However, while it is certainly a relevant decision, *Brennon* does not appear directly on point as that case concerned a public school district defendant. The court appears to have relied in part on the fact that local school districts provide free public education by constitutional mandate and that local districts are managed by the state. *Brennon*, 13 Cal. 5th at 681. Defendant GHS is not in this same position. While M.B. was receiving what Plaintiffs frame as a "free public education" while at GHS, that education was not directly received from a public entity, as was the case in *Brennon*, but instead from a private entity via funding provided by the state. As the court in *Brennon* emphasized, the appropriate method for determining whether an entity is a "business establishment" is to analyze the attributes of the entity in question. *Id.* This assessment is made with respect to the entity's actions that are at issue in the suit. *Doe v. Cal. Lutheran High Sch. Ass'n*, 170 Cal. App. 4th 828, 839 (2009). Thus,

19

the question here is whether GHS is properly considered a "business establishment" with regard to its provision of education and schooling to M.B.

The Court finds that, for purposes of motion to dismiss, Plaintiffs have adequately alleged that Defendant GHS was a business establishment within the meaning of the Unruh Act.  In the 4AC, Plaintiffs allege that Defendant GHS was a private entity with contracts with Yolo County SELPA to provide special education services to students such as M.B.  (4AC ¶ 5.)  These allegations, while minimal, establish a plausible claim that Defendant GHS is a private entity providing education services in exchange for economic value as a part of a business contract with Yolo County SELPA.  In this context, Defendant GHS' education and treatment of students is reasonably considered part of a business function.  At the pleading stage, the Court is satisfied that these allegations establish that GHS is a business establishment.

This is not to say that Plaintiff's claim here is not without potential flaws.  In their motion, Defendant GHS suggests that it is a nonprofit.  Nonprofit status does not preclude that an entity is a business establishment, but "[it] does mean that it should not be deemed a business unless it has some significant resemblance to an ordinary for-profit business."  *Doe*, 170 Cal. App. 4th at 839.  However, this evidence is outside the complaint and thus not properly considered on a motion to dismiss.  Similarly, while Plaintiff also cites to another case from this district, *C.R. v. Elk Grove Unified Sch. Dist.*, No. 2:20-cv-02296-KJM-AC, 2025 WL 1411554 (E.D. Cal. May 15, 2025), which found that a similarly positioned nonpublic school was not a business entity (GHS Reply (ECF No. 52) at 11), that decision was rendered at the summary judgment stage and relied heavily on evidence concerning the nature of the school's activities and the form of its compensation.  *Id.* at *10.  It may well be that with evidentiary support it becomes apparent that GHS is not properly considered a business establishment.  Nevertheless, at this stage of the proceedings and based on the allegations in the 4AC, Plaintiff has alleged sufficient facts to state an Unruh claim against Defendant GHS.

**V.  Sixth Cause of Action – Violation of the Ralph Act**

Defendant GHS' Motion as to Plaintiffs' Ralph Act claim is denied largely for the same reasons discussed with regard to Plaintiffs' Section 220 claim.  (*See supra* Defendant GHS' Motion to Dismiss, III.)  The 4AC clearly alleges that M.B., like other students at GHS, was subject to physical restraints and excessive force in response to known disability-related behavior (4AC ¶¶ 24, 30), and that the usage of restraints and force allegedly resulted in M.B.'s death (*see id.* ¶¶ 30–40).  Contrary to Defendant's arguments, these allegations are sufficient to support an allegation that Defendant GHS subjected M.B. to "violent acts" and that the substantial motivating factor for those acts was M.B.'s disability.  Cal. Civil Code § 51.7.  Accordingly, Defendant's Motion to Dismiss is denied as to this cause of action.

**VI. Seventh Cause of Action – Violation of the Bane Act**

For the reasons stated above (*see supra* Defendant GHS' Motion to Dismiss, II), the Court disagrees with Defendant GHS' argument that the 4AC lacks sufficient factual allegations to support that GHS was a state actor.  Plaintiffs have also adequately alleged GHS' wrongful act supporting this claim.  While the Seventh Cause of Action does not repeat Plaintiffs' allegations concerning the events that led to M.B.'s death, these are made clear throughout the 4AC.  Defendant GHS argues that the usage of "prone restraint without more" does not violate an individual's constitutional rights.  (GHS Reply at 12 (quoting *D.M. v. Bd. of Educ. Toledo Pub. Schs.*, 575 F. Supp. 3d 897, 903 (N.D. Ohio 2021)).)  But reducing Plaintiffs' allegations regarding M.B.'s treatment to simple usage of a prone restraint grossly understates the severity of M.B.'s alleged treatment.  Per Plaintiffs' allegations, M.B. was subject to a prolonged prone restraint lasting more than an hour during which GHS staff exerted heavy pressure on M.B. and did not monitor M.B.'s condition, ultimately resulting in his death.  (4AC ¶ 31–34.)  Plaintiffs also allege that even after M.B. lost consciousness, GHS staff failed to get immediate medical assistance for M.B.  (*Id.* ¶ 35–39.)  Framing this as a case simply about the usage of a prone restraint unreasonably minimizes the

seriousness of the alleged conduct.  It is hard to see how the allegations in the 4AC, if true, do not contain the something "more" that Defendants suggest is necessary.  (*See* GHS Reply at 12.)  Defendant GHS' Motion is thus denied as to Plaintiffs' Seventh Cause of Action.

**VII.    Ninth Cause of Action – Negligence/Negligence Per Se**

Plaintiffs' Ninth Cause of Action is a cause of action for both negligence and negligence per se.  (4AC at 19–20.)  Plaintiffs have sufficiently alleged a negligence cause of action.  While the section of the 4AC specifically related to Plaintiffs' negligence cause of action is not the model of clarity, the factual basis for Plaintiff's claim of negligence is nonetheless apparent.  In the complaint, Plaintiffs allege that Defendant GHS "breached their duty of ordinary care to M.B." (*Id.* ¶ 89.)  In California cases involving the negligence of schools and their staff, the "duty of ordinary care" is a commonly used reference to the duty owed by schools and their employees to students in supervising them.  *See Ratcliff v. The Roman Catholic Archbishop of L.A.*, 79 Cal. App. 5th 982, 1002 (2022) ("Ample case authority establishes that school personnel owe students under their supervision a protective duty of ordinary care[.]" (quoting *C.A. v. William S. Hart Union High Sch. Dist.*, 53 Cal. 4th 861, 865 (2012))); *see also Hoyem v. Manhattan Beach Sch. Dist.*, 22 Cal. 3d 508, 516 (1978) (referencing "a school district's familiar duty to exercise ordinary care" in its supervision of students).  Reasonably construed, Plaintiffs' claim is that Defendant GHS owed this duty to M.B., breached this duty through the use of physical restraints and unnecessary force that led to his death, that the breach of this duty was the cause of Plaintiffs' injury, and that Plaintiffs suffered damages as a result.  Plaintiffs' failure to plead in perfect formulaic fashion the elements of negligence does not render this cause of action inadequate.

However, as to Plaintiffs' claim that Defendant GHS was negligent per se, the 4AC does not contain sufficient allegations to support the per se presumption.  The 4AC contains a block citation to more than thirty California statutes, federal statutes, and California regulations, as well as citations to the United States Constitution and a

specific California state court case.  (4AC ¶ 87.)  These citations are connected to this case with only a vague allegation that Defendants CDE, DJUSD, Yolo SELPA, and Yolo CDE "owed certain statutory and constitutional duties to M.B." (*Id.*)  Plaintiffs allege that Defendant GHS owed these same duties to M.B. by virtue of GHS' contract with these entities. (*Id.* ¶ 88.)  The long list of various statutes provided in the 4AC is not to plausibly indicate the applicability of the per se presumption of negligence.  *See Jack v. Pearson*, No. 1:17–cv-00520-AWI-SAB, 2018 WL 1567796, at *4 (E.D. Cal. March 30, 2018).

Given the above, the Court will deny Defendant GHS' motion as to Plaintiff's claim for negligence.  But Defendant's Motion is granted with leave to amend as to Plaintiff's allegation that Defendant GHS was negligent per se.

**VIII.    Tenth Cause of Action – Wrongful Death**

Defendant GHS' Motion is denied as to Plaintiffs' wrongful death cause of action.  Defendant's sole argument for dismissal was the purported inadequacy of Plaintiffs' negligence cause of action.  (GHS Mot. at 28.)  As determined above, that claim is adequately pled.  As such, Defendant's Motion as to the Tenth Cause of Action is denied.

**DEFENDANT GHS' MOTION TO STRIKE**

Defendant GHS has also moved to strike two portions of the 4AC: (1) Plaintiffs' request for injunctive relief on the basis that M.B. is deceased and GHS is closed and (2) the usage of the word "murderers" in Paragraph 41 of the 4AC.  (GHS Mot. at 28–29.)  Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  "Motions to strike should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation or unless prejudice would result to the moving party from denial of the motion."  *Harper v. Charter Commc'ns*, LLC, No. 2:19-cv-00902-WBS-DMC, 2020 WL 916877, at *5 (E.D. Cal. Feb. 26, 2020)

(cleaned up) (quoting *Delgado v. Marketsource, Inc.*, No. 17-cv-07370, 2019 WL 1904216, at *3 (N.D. Cal. Apr. 29, 2019)).

Regarding Defendant GHS' first argument, the Court grants Defendant's Motion.  Defendant represents that GHS is now closed.  Defendants argue that this closure and M.B.'s death mean Plaintiffs lack standing to bring a request for injunctive relief.  Plaintiffs do not present any substantive argument to the contrary and instead simply argue that such a determination is premature.  Given the lack of standing to pursue injunctive relief, the Court will grant Defendant's Motion and strike the request for injunctive relief from the complaint.  However, the Court grants this Motion without prejudice to Plaintiffs later raising a claim for injunctive relief if they can identify why they have standing to pursue such relief.

As to the inclusion of the word "murderers" in the 4AC, the Court will also grant Defendant GHS' motion on the grounds that it is immaterial, scandalous, and highly prejudicial.  The Court grants this Motion based in part on the reality that the word "murderer" used in a document filed in federal court could imply a legal determination that has not properly been made.  But the Court also grants Defendant GHS' request with some reluctance.  The inclusion of this single word in the complaint is likely of no legal significance.  Motions of this nature are not an effective use of the Court and parties' time, especially given the limited importance of pleadings in federal practice.  With that said, it is still apparent that Defendant's Motion should be granted.  The Court cautions Defendant GHS that the Court granting this Motion should not be taken as a general license to attempt to police the language used in a future amended complaint.

## CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that:

1. Defendant CDE's Motion to Dismiss (ECF No. 43) is GRANTED.  Plaintiffs' Ninth and Tenth Causes of Action are dismissed as to Defendant CDE.

2. Defendant DJUSD's Motion to Dismiss (ECF No. 44) is GRANTED. Plaintiffs' claims against Defendant DJUSD are dismissed in their entirety.

3. Yolo Defendants' Motion to Dismiss (ECF No. 45) is GRANTED. Plaintiffs' claims against Defendant Yolo COE and Yolo County SELPA are dismissed in their entirety.

4. Defendant GHS' Motion to Dismiss (ECF No. 46) is GRANTED IN PART and DENIED IN PART

   a. Defendant GHS' Motion is GRANTED as to the following claims, which are dismissed as to Defendant GHS:

      i. Plaintiffs' Second Cause of Action

      ii. Plaintiffs' Ninth Cause of Action solely as to Plaintiffs' negligence per se allegation.

   b. Defendant GHS' Motion is DENIED as to all other Causes of Action.

5. Defendant GHS' Motion to Strike (ECF No. 46) is GRANTED.

6. Plaintiffs are granted leave to amend their complaint. Any amended complaint must be filed within twenty-one days of this Order.

IT IS SO ORDERED.

Dated:   **April 24, 2026**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

25